# Syllabus

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Kathryn L. Loomis

DEPARTMENT OF LICENSING AND REGULATORY AFFAIRS/UNEMPLOYMENT INSURANCE AGENCY v LUCENTE

DEPARTMENT OF TALENT AND ECONOMIC DEVELOPMENT/UNEMPLOYMENT INSURANCE AGENCY v HERZOG

Docket Nos. 160843 and 160844. Argued March 3, 2021 (Calendar No. 5). Decided July 30, 2021.

The Unemployment Insurance Agency (UIA) brought actions in the Macomb and Wayne Circuit Courts against claimants Frank Lucente and Michael Herzog, respectively, to appeal the decisions of the Michigan Compensation Appellate Commission (MCAC) (whose duties have since been transferred, in part, to the Unemployment Insurance Appeals Commission) that the claimants were not required to pay restitution and fraud penalties under the Michigan Employment Security Act (MESA), MCL 421.1 *et seq*., despite the fact that they had improperly received unemployment benefits after becoming employed full-time and providing inaccurate responses to certification questions concerning their new employment. After the UIA discovered the overpayments and suspected fraud, it issued documents entitled "Notice[s] of Redetermination" to each claimant, one of which described the claimant's new employment and explained that it made him ineligible to receive the already-paid benefits, and the other of which alleged that the claimant had intentionally concealed his new employment from the UIA on the basis of the answers provided while certifying. The notices further explained that the claimants had the right to appeal these "redeterminations" under MCL 421.33 and provided instructions on how to exercise that right. The UIA also mailed each claimant a separate document that stated the appellants' repayment obligations: restitution for the overpayment and financial penalties for the fraud. Both sets of notices were issued within a year of the benefit payments at issue but more than 30 days after the last payment. The claimants appealed these "redeterminations." In *Lucente*, the ALJ affirmed both of the UIA's November 30, 2010 redeterminations, but the MCAC reversed. The MCAC concluded that the November 30, 2010 redetermination was not a valid "redetermination" unless the payment of benefits was considered an original determination that Lucente was unemployed for those weeks, and it further reasoned that the "redetermination" had not been issued within 30 days of any benefit check and no good cause was shown. In a separate opinion that addressed the alleged fraud, the MCAC similarly concluded that the UIA's failure to issue an original determination on the issue of fraud was grounds for setting aside that "redetermination." In *Herzog*, the ALJ set aside both "redeterminations," citing the UIA's failure to issue original

determinations on eligibility and fraud. The MCAC affirmed, adopting the ALJ's factual findings and conclusions of law. In both *Lucente* and *Herzog*, the UIA appealed the MCAC's decisions in the circuit court. The Macomb Circuit Court, Diane M. Druzinski, J., affirmed the MCAC in *Lucente*, and the Wayne Circuit Court, John A. Murphy, J., affirmed the MCAC in *Herzog*. The UIA sought leave to appeal in the Court of Appeals, which granted the applications and consolidated the appeals. In a published opinion, the Court of Appeals, GADOLA, P.J., and SERVITTO and REDFORD, JJ., concluded that the circuit courts had not applied the correct legal principles when they affirmed the decisions of the MCAC and held that the UIA's identification of its decisions as "redeterminations" was not grounds for setting aside the decisions. The panel held that the UIA was not proceeding under MCL 421.32a but rather under MCL 421.62, and therefore it was not constrained by the time limit for issuing redeterminations. 330 Mich App 237 (2019). The Supreme Court granted the appellants' joint application for leave to appeal. 505 Mich 1127 (2020).

In an opinion by Chief Justice MCCORMACK, joined by Justices BERNSTEIN, CLEMENT, CAVANAGH, and WELCH (as to Parts I, II, III, IV(A), and V as it relates to MCL 421.62 and determinations concerning fraud and restitution), the Supreme Court *held*:

The Court of Appeals correctly held that MCL 421.62 authorizes the UIA to issue original fraud and restitution determinations that are not subject to the constraints of MCL 421.32a. However, it erred by concluding that the UIA's decision to issue "redeterminations" in these cases was of no substantive effect. The UIA must issue an original determination alleging fraud, and its failure to do so was grounds for invalidating the "redeterminations" in this case. On this issue, the payment of benefits cannot serve as an original "determination" on the alleged fraud, and the UIA's issuance of determinationless "redeterminations" deprives claimants of their right to protest. When UIA-initiated review of a past-paid benefit results in a decision that the claimant received benefits during a period of ineligibility or disqualification and owes restitution as a result, the UIA must begin with an original "determination" as described in MCL 421.62.

1. MCL 421.62(a) has long permitted the UIA to recover already-paid benefits when it determines that a person has obtained benefits to which that person is not entitled. And MCL 421.62(b) provides that when the UIA determines that a person has intentionally made a false statement or misrepresentation or has concealed material information to obtain benefits, the person shall have their right to benefits canceled in addition to any other applicable penalties, e.g., the penalties for fraud described in MCL 421.54. This language refers to the UIA making a "determination" that the claimant received an overpayment or engaged in fraud, and, significantly, a "determination" under § 62 is distinguishable from a "redetermination" under § 32a. The MESA plainly contemplates the issuance of the former before the latter. In light of this language and the different protest and appeal processes described in §§ 32a and 33, the UIA must issue an original determination that either requires restitution for an overpayment or assesses penalties for fraud. This conclusion is reinforced by the MESA's different time constraints for UIA action under § 62(a) and § 32a. Accordingly, the Court of Appeals correctly concluded that § 62 authorizes the UIA to make original determinations imposing restitution for an overpayment or penalties for fraud.

2. With respect to the "redeterminations" accusing the appellants of fraud and imposing fines and penalties under §§ 54 and 62(b), the issue of fraud does not relate to whether or not the claimant was eligible or qualified during any period of time. Whether a claimant satisfies the eligibility criteria described in § 28(1) (or might be disqualified under § 29) is distinct from whether the claimant has willfully violated or intentionally failed to comply with the MESA under MCL 421.54(a) and from whether the claimant has made a false statement or representation knowing it to be false or has knowingly and willfully with intent to defraud failed to disclose a material fact under MCL 421.54(b). The latter involves a culpable mental state; the former does not. Supreme Court precedent—specifically, *Royster v Employment Security Comm*, 366 Mich 415 (1962)—supported this understanding of the MESA. While the relevant language has changed slightly, the MESA still refers to UIA-initiated "redeterminations" as applying where there is a "disputed issue." As in *Royster*, the issue of fraud was not disputed at the time these claimants received benefits; the UIA first alleged fraud when it issued the "Notice[s] of Redetermination." The appellants' characterization of the UIA's fraud decisions as untimely but otherwise valid "redeterminations" was incorrect, because the UIA must issue an original determination when it is alleging that a claimant engaged in fraud.

3. While the language of MCL 421.32(f) would seem to support the view that the payment of benefits is a "determination" that these appellants were unemployed, because being unemployed is a criterion of eligibility, this conclusion was incongruous with other language in the MESA. MCL 421.62(a) allows the UIA to issue "determinations" that a claimant received a benefit to which they were not entitled. Because an overpayment necessarily involves the payment of a benefit, whenever the UIA issues a "determination requiring restitution" under MCL 421.62(a), that same decision might be described as the UIA "redetermining" any determination on eligibility that is created by the benefit check pursuant to § 32(f). The reference in § 32(f) to a benefit check as a "determination" was best understood by reading that provision as a whole. That subsection explains that "[a] chargeable employer, upon receipt of a listing of the check as provided in [MCL 421.21(a)], may protest by requesting a redetermination of the claimant's eligibility or qualification as to that period and a determination as to later weeks and benefits still unpaid that are affected by the protest." But no text in § 32(f) refers to UIA-initiated redeterminations under § 32a. Instead, it is the employer's protest of the benefit-check determination that is the triggering event. This understanding is reinforced by § 32(f)'s reference to the employer's receipt of a listing of the check as provided in § 21(a). Reading § 21(a) together with § 32 clarifies that, upon the filing of an initial application for benefits, every base-period employer will receive a monetary determination that indicates the claimant's reported reason for separation and the extent to which that employer's unemployment insurance account will be charged for any benefits that might be paid. The employer can protest the information reported in the monetary determination, and the employer should do so if it disagrees. If benefits are paid, the chargeable employer will receive the listing of the check as provided in § 21(a) and will have the opportunity to protest by requesting a redetermination of the claimant's eligibility or qualification as to that period and a determination as to later weeks and benefits still unpaid that are affected by the protest. When such a protest is made, it triggers the application of § 32(f) and the concept of the benefit-check-as-determination. Absent such a protest, the benefit check cannot serve as a "determination" for a UIA-initiated "redetermination" finding that a claimant received benefits to which they were not entitled, regardless of whether § 32a's time constraints have been satisfied. Moreover, construing the MESA as requiring the UIA to issue an original "determination requiring restitution" when it seeks

to recover an overpayment (absent an employer's protest under § 32(f)) is consistent with other ways in which a claimant might receive a benefit to which they are not entitled. For these reasons, the MESA requires the UIA to proceed by way of an original "determination" when (in the absence of an employer protest) the UIA seeks to establish that a claimant received a benefit to which the claimant is not entitled and imposes restitution pursuant to MCL 421.62(a).

4. The UIA's failure to issue "determinations" was grounds for setting aside the "redeterminations." The MESA describes "determinations" and "redeterminations" as distinct decision-making steps, and the distinction is made plain in § 32a, which provides that a "redetermination" may affirm, modify, or reverse the prior determination. Although the MESA never provides a comprehensive definition of either term, it repeatedly refers to the process described in § 32a whenever it mentions "redeterminations." The MESA requires the UIA to "review any determination" whenever an interested party makes a timely protest, which plainly contemplates some degree of UIA review in response to a protest, even if it ultimately affirms the prior determination or transfers the case for an administrative hearing. Such review is foreclosed if the UIA can simply begin with a "redetermination." Holding that claimants would not suffer discernable prejudice if the UIA began at the "redetermination" step, so long as the claimant was adequately apprised of the issue and their right to appeal the decision, would allow the UIA to always begin at the "redetermination" step, without consequence. This holding would also run afoul of the rule that courts should avoid interpreting a statute in a way that renders any part of it nugatory or surplusage. While a claimant's right to protest the original determination and have the UIA review its decision might seem less important than the administrative hearing that follows, the wisdom of the statutory process is a question for the Legislature. The MCAC correctly concluded that the UIA must issue a "determination" before it issues a "redetermination" and that the failure to do so is grounds for setting aside a determinationless "redetermination." To the extent the Court of Appeals held otherwise, its reasoning was rejected as incompatible with the MESA.

Court of Appeals judgment reversed.

Justice WELCH, concurring in part, dissenting in part, and concurring in the judgment, joined Parts I, II, III, and IV(A) of the majority opinion, and also joined Part V as it relates to MCL 421.62 and determinations concerning fraud and restitution. However, she disagreed that a benefit check was considered a determination under MCL 421.32(f) only for the purposes of an employer filing a protest after receiving the listing of the benefit check. Rather, she believed the MESA clearly provided that a benefit check could always serve as an original determination as to eligibility and qualification to receive benefits in an unemployment proceeding, even if the action was driven by the UIA as opposed to the employer. She also disagreed that the UIA was unable to self-initiate a redetermination of a claimant's eligibility for benefits under MCL 421.32a(1) or (2) after it obtained information showing that an individual was paid but not eligible for such benefits. In such a case, she did not believe that a new original determination as to ineligibility was required because a benefit check in fact serves as an original determination on that issue. As a result, she did not join Part IV(B) or (C) of the majority opinion in full. She joined Part IV(C) of the majority opinion to the extent that it invalidated the UIA's decisions as to fraud and restitution and requires the UIA to respect the legal and procedural distinctions between a determination and redetermination. However, she believed that the Court should uphold the

redetermination notices as they related to the claimant's eligibility, subject to the "good cause" requirement of MCL 421.32a(2). She believed that §§ 32(f) and 32a provided the UIA authority to use either prior benefit-check determinations or an original eligibility determination as the base determination for reconsidering a claimant's eligibility for benefits. Given that the redeterminations in this matter were issued more than 30 days after any applicable determination, the UIA needed to show good cause for its delay. This issue was never litigated during the ALJ proceedings in Lucente's case, and because Herzog did not receive a hearing before an ALJ, the matter has yet to be litigated in his case. Accordingly, she would have remanded these cases to the appropriate ALJs to allow the parties to litigate whether the UIA had good cause for reconsidering the claimants' eligibility. However, she would have invalidated the notices at issue as they related to fraud and restitution because those findings required original § 62 determinations, and she thus joined Part V of the majority opinion in part.

Justice ZAHRA, joined by Justice VIVIANO, concurring in part and dissenting in part, agreed with the majority that the Court of Appeals correctly held that MCL 421.62 of the MESA authorizes the UIA to make original, in-the-first-instance determinations imposing restitution for overpayment or penalties for fraud. He dissented, however, from the majority's holding that the notices sent to these claimants were really redeterminations, which he characterized as elevating form over substance. In his view, the UIA's notices were, in substance, § 62 determinations that were simply mislabeled, particularly given that the UIA itself cited § 62 as authority for its actions. He stated that the majority's ruling that the notices were redeterminations because they were labeled as such was contrary to the substance-over-form approach followed in other areas such as administrative law, the law of pleadings, and statutory interpretation. Moreover, he would have held that the claimants were not prejudiced by the UIA's actions, given that the notices informed claimants that they had been disqualified from receiving benefits and why, that they had fraudulently received benefits and were required to pay restitution and fraud penalties, that they owed the UIA money and how much, and that they had the right to appeal. The determinations of fraud were made within the proper time frame, claimants were informed of their right to protest, and claimants were able to, and did, seek appellate review. Accordingly, Justice ZAHRA would have affirmed the Court of Appeals.

# OPINION

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED July 30, 2021

### S T A T E  O F  M I C H I G A N

### SUPREME COURT

DEPARTMENT OF LICENSING AND
REGULATORY
AFFAIRS/UNEMPLOYMENT
INSURANCE AGENCY,

      Appellee,

v                                                                                    No. 160843

FRANK LUCENTE,

      Claimant-Appellant,

and

DART PROPERTIES II, LLC,

      Employer-Appellee.

DEPARTMENT OF TALENT AND
ECONOMIC
DEVELOPMENT/UNEMPLOYMENT
INSURANCE AGENCY,

      Appellee,

v                                               No. 160844

MICHAEL HERZOG,

            Claimant-Appellant,

and

CUSTOM FORM, INC.,

            Employer-Appellee.

_____

BEFORE THE ENTIRE BENCH

MCCORMACK, C.J.

In these cases we consider the process the defendant Unemployment Insurance Agency (the Agency) must follow when it seeks to establish that a claimant received benefits to which they were not entitled—an overpayment. Relatedly, we consider the process the Agency must follow to establish that the claimant committed fraud when the Agency seeks to impose penalties for that fraud.

Frank Lucente and Michael Herzog, the appellants, applied for and received unemployment benefits. Each found new employment before their benefits expired. Only "unemployed" individuals are eligible to receive benefits, but they continued to claim benefits while employed full-time.

The Agency issued decisions finding that the appellants received benefits they were not entitled to receive. The Agency also found, in separate decisions, that the appellants had intentionally misrepresented or concealed their employment status—that they had committed fraud. The Agency identified these decisions as "redeterminations."

2

The Agency now acknowledges that it should have issued original "determinations" and not "redeterminations." Characterizing its error as a mere mislabeling, the Agency argues that its mistake does not provide grounds for setting aside the "redeterminations" because the decisions adequately apprised the appellants of the Agency's various findings and did not prevent the appellants from pursuing administrative appeals of those decisions.

We conclude otherwise. Allowing the Agency to begin at the "redetermination" step would deprive unemployment claimants of their statutory right to protest an allegation of benefit fraud and have the Agency review that decision before the claimant files an administrative appeal. The Michigan Employment Security Act (MESA), MCL 421.1 *et seq.*, provides claimants with the right to protest an unfavorable determination *and* the right to appeal any redetermination. Because the Agency never issued a "determination" in these cases on the issue of fraud, the result urged by the Agency would render meaningless the claimant's right to protest. For that reason, we hold that the Agency must begin by issuing an original "determination" when it seeks to establish that a claimant engaged in fraud. Failure to do so is grounds for invaliding a "redetermination" finding fraud and imposing associated fines and penalties. Likewise, we conclude that the Agency should have issued original "determinations" on the issue of the appellants' ineligibility. When the Agency begins with a "redetermination" that a claimant received benefits during a period of ineligibility and owes restitution as a result, the Agency denies the claimant their right to protest the finding of ineligibility. For these reasons we reverse the judgment of the Court of Appeals.

3

## I. THE STATUTORY PROCESS

The statutory provisions that govern the timelines and procedures the Agency must follow when it evaluates a claim for unemployment benefits, including review for overpayments and benefit fraud, are not especially user-friendly. But understanding this statutory process is the first step to understanding the parties' disagreements.

Subsection 32(a) of the MESA directs the Agency to "promptly examine claims," "make a determination on the facts," and "promptly notif[y]" the "claimants and other interested parties . . . of the determination and the reasons for the determination." MCL 421.32(a).

The MESA does not define the term "determination," but the act tells us in what circumstances a "determination" can be made. In the context of a claim for benefits, a "determination" is an official decision by the Agency that involves agency fact-finding and application of law (the MESA) to those facts. See *Black's Law Dictionary* (11th ed) (defining "determination" as "[t]he act of deciding something officially").

The MESA requires the Agency to issue a specific type of determination when an application for benefits is filed. This is the "monetary determination," and it is described in § 32(b):

> The unemployment agency shall mail to the claimant, to each base period employer or employing unit, and to the separating employer or employing unit, a monetary determination. The monetary determination shall notify each of these employers or employing units that the claimant has filed an application for benefits and the amount the claimant reported as earned with the separating employer or employing unit, and shall state the name of each employer or employing unit in the base period and the name of the separating employer or employing unit. The monetary determination shall also state the claimant's weekly benefit rate, the amount of base period wages paid by each base period employer, the maximum benefit amount that could be charged to each employer's account or experience account, and the

4

reason for separation reported by the claimant. The monetary determination shall also state whether the claimant is monetarily eligible to receive unemployment benefits. Except for separations under section 29(1)(a), no further reconsideration of a separation from any base period employer will be made unless the base period employer notifies the unemployment agency of a possible disqualifying separation within 30 days of the separation in accordance with this subsection. Charges to the employer and payments to the claimant shall be as described in section 20(a). New, additional, or corrected information received by the unemployment agency more than 10 days after mailing the monetary determination shall be considered a request for reconsideration by the employer of the monetary determination and shall be reviewed as provided in section 32a. [MCL 421.32(b) (emphasis added).]

The monetary determination will indicate whether the claimant is "monetarily eligible"; that is, whether the claimant's base-period[1] wages are sufficient. See *id.* The (somewhat misnamed) monetary determination will also include *non*-monetary information: namely, the claimant's reported reason for separation from employment from the separating employer and, if applicable, any other base-period employer. See *id.*

The MESA does not require the Agency to issue any additional "determinations" in connection with an application for benefits unless the claimant's reported reason(s) for separation are disputed by an employer, see *id.*, "the claimant's most recent base period or benefit year separation was for a reason other than the lack of work," MCL 421.32(c), or if there is a disqualification[2] issue related to a base-period employer, see *id.* Together,

---

[1] The "base period" refers to the period of time in which wages earned by the claimant are considered to determine whether the claimant satisfies the wage threshold for unemployment benefits. See MCL 421.27; MCL 421.45.

[2] Non-monetary "eligibility" requirements are described in § 28 of the MESA. See MCL 421.28(1) ("An unemployed individual is eligible to receive benefits with respect to any week only if the unemployment agency finds all of the following . . . ."); see also MCL 421.48 (defining "unemployed").

5

Subsections (a) through (c) facilitate the expeditious resolution of whether the applicant is due unemployment benefits.

If the claimant's application for benefits is approved, they will be allowed to claim (certify for) benefits. See MCL 421.27(a)(1) ("When a determination, redetermination, or decision is made that benefits are due an unemployed individual, the benefits become payable . . . and continue to be payable . . . if the individual continues to be unemployed and to file claims for benefits, until the determination, redetermination, or decision is reversed [or] a determination, redetermination, or decision on a new issue holding the individual disqualified or ineligible is made . . . ."). As part of the certification process, the claimant is required to answer questions about their continuing entitlement to receive benefits.

Sometimes a claimant is paid a benefit they were not entitled to receive. The MESA directs the Agency to recover these overpayments. See MCL 421.62(a) and (d).[3] The

_____

Comparatively, "disqualification" from benefits is described in § 29 and is distinct from eligibility. MCL 421.29. A disqualification can arise from things such as the claimant leaving work without good cause attributable to the employer ("voluntary quit"), see MCL 421.29(1)(a); the claimant being discharged for work-related misconduct, see MCL 421.29(1)(b); or the claimant refusing an offer of suitable work, see MCL 421.29(1)(c). A claimant who is disqualified from receiving benefits must fulfill certain requalifying requirements such as working for a certain period before again becoming entitled to benefits. See MCL 421.29(2) and (3).

[3] Section 62 has been amended since the decisions here at issue. While the changes are not critical to our analysis, the prior versions are reprinted here. In November 2010 (applicable to appellant Lucente) § 62 provided in relevant part:

> (a) If the commission determines that a person has obtained benefits to which that person is not entitled, the commission may recover a sum equal to the amount received by 1 or more of the following methods: . . . The commission shall not recover improperly paid benefits from an individual

6

more than 3 years, or more than 6 years in the case of a violation of section 54(a) or (b) or sections 54a to 54c, after the date of receipt of the improperly paid benefits unless: (1) a civil action is filed in a court by the commission within the 3-year or 6-year period, (2) the individual made an intentional false statement, misrepresentation, or concealment of material information to obtain the benefits, or (3) the commission issued a determination requiring restitution within the 3-year or 6-year period. . . .

(b) . . . [I]f the commission determines that a person has intentionally made a false statement or misrepresentation or has concealed material information to obtain benefits, whether or not the person obtains benefits by or because of the intentional false statement, misrepresentation, or concealment of material information, the person shall, in addition to any other applicable penalties, have his or her rights to benefits for the benefit year in which the act occurred canceled as of the date the commission receives notice of, or initiates investigation of, a possible false statement, misrepresentation, or concealment of material information, whichever date is earlier, and wages used to establish that benefit year shall not be used to establish another benefit year. . . .

(c) Any determination made by the commission under this section is final unless an application for a redetermination is filed with the commission in accordance with section 32a.

(d) The commission shall take the action necessary to recover all benefits improperly obtained or paid under this act, and to enforce all penalties under subsection (b). [MCL 421.62, as amended by 1995 PA 125.]

In October 2017 (applicable to appellant Herzog), § 62 provided as follows:

(a) If the unemployment agency determines that a person has obtained benefits to which that person is not entitled, or a subsequent determination by the agency or a decision of an appellate authority reverses a prior qualification for benefits, the agency may recover a sum equal to the amount received plus interest by 1 or more of the following methods: . . . . The unemployment agency shall issue a determination requiring restitution within 3 years after the date of finality of a determination, redetermination, or decision reversing a previous finding of benefit entitlement. Except in the case of benefits improperly paid because of suspected identity fraud, the unemployment agency shall not initiate administrative or court action to recover improperly paid benefits from an individual more than 3 years after the date that the last determination, redetermination, or decision establishing

7

MESA also directs the Agency to impose administrative fines and other penalties if the claimant makes a false statement or fails to disclose material information in connection with a claim. MCL 421.54(b) ("[A] claimant . . . who makes a false statement or representation knowing it to be false, or knowingly and willfully with intent to defraud fails

restitution is final. Except in the case of benefits improperly paid because of suspected identity fraud, the unemployment agency shall issue a determination on an issue within 3 years from the date the claimant first received benefits in the benefit year in which the issue arose, or in the case of an issue of intentional false statement, misrepresentation, or concealment of material information in violation of section 54(a) or (b) or sections 54a to 54c, within 3 years after the receipt of the improperly paid benefits unless the unemployment agency filed a civil action in a court within the 3-year period; the individual made an intentional false statement, misrepresentation, or concealment of material information to obtain the benefits; or the unemployment agency issued a determination requiring restitution within the 3-year period. . . .

(b) For benefit years beginning on or after October 1, 2000, if the unemployment agency determines that a person has intentionally made a false statement or misrepresentation or has concealed material information to obtain benefits, whether or not the person obtains benefits by or because of the intentional false statement, misrepresentation, or concealment of material information, the person shall, in addition to any other applicable interest and penalties, have his or her rights to benefits for the benefit year in which the act occurred canceled as of the date the claimant made the false statement or misrepresentation or concealed material information, and wages used to establish that benefit year shall not be used to establish another benefit year. . . .

(c) Any determination made by the unemployment agency under this section is final unless an application for a redetermination is filed in accordance with section 32a.

(d) The unemployment agency shall take the action necessary to recover all benefits improperly obtained or paid under this act, and to enforce all interest and penalties under subsection (b). . . . [MCL 421.62, as amended by 2016 PA 522.]

8

to disclose a material fact, to obtain or increase a benefit . . . is subject to administrative fines and is punishable as provided in this subsection . . . ."); MCL 421.62(b) (cancellation of benefits); MCL 421.62(d).

If a claimant or employer disagrees with any "determination" made by the Agency, the MESA provides them with the right to request a "review of [the] determination." This is known as a "protest," and it is described in MCL 421.32a(1):[4]

> Upon application by an interested party for review of a determination, upon request for transfer to an administrative law judge for a hearing filed with the unemployment agency within 30 days after the mailing or personal service of a notice of determination, or upon the unemployment agency's own motion within that 30-day period, the unemployment agency shall review any determination. After review, the unemployment agency shall in its discretion issue a redetermination affirming, modifying, or reversing the prior determination and stating the reasons for the redetermination, or may transfer the matter to an administrative law judge for a hearing. If the unemployment agency issues a redetermination, it shall promptly notify the interested parties of the redetermination. The redetermination is final unless within 30 days after the mailing or personal service of a notice of the redetermination an appeal is filed with the unemployment agency for a hearing on the redetermination before an administrative law judge pursuant to section 33.

In order to be timely, a protest must be made "within 30 days after the mailing or personal service of [the] notice of determination[.]" MCL 421.32a(1).[5] The Agency can

---

[4] As amended by 2017 PA 232. Slightly different versions were in effect during the time periods relevant to these cases; the changes to the statute were of a housekeeping nature and not relevant to our analysis. See 1996 PA 503 and 2011 PA 269.

[5] If the Agency denies a protest on timeliness grounds, the protesting party can appeal that decision to an administrative law judge (ALJ). If the ALJ determines there was "good cause" for the late protest, the appeal from the denial will be treated as though the protesting party is appealing a redetermination that affirmed the underlying determination. See MCL 421.33 ("With respect to an appeal from a denial of redetermination, if the administrative law judge finds that there was good cause for the issuance of a redetermination, the denial

9

also review a prior determination *in the absence of a protest* so long as it does so within the same 30-day period. *Id.* In either situation, the Agency "shall review [the] determination" and either (i) issue a "redetermination" that affirms, modifies, or reverses the determination, or (ii) transfer the matter for an administrative hearing. *Id.*

Agency-initiated review of a prior determination can occur outside the 30-day period. See MCL 421.32a(2). Like review under § 32a(1), this review can result in the Agency issuing a "redetermination" that affirms, modifies, or reverses the prior decision or the Agency transferring the matter for a hearing. *Id.* There must be "good cause" for Agency-initiated review under § 32a(2), and the Agency cannot initiate review more than one year from "the date of mailing or personal service of the original determination on the disputed issue . . . ." *Id.*[6]

A claimant or employer who disagrees with a redetermination can appeal the decision to an administrative law judge (ALJ). See MCL 421.32a(1) and (3); MCL 421.33. A redetermination that is not appealed "within 30 days after the mailing or personal service of [the] notice of the redetermination" becomes final. MCL 421.32a(1) and (3); see also MCL 421.33 On appeal, the ALJ "shall decide the rights of the interested parties and shall notify the interested parties of the decision, setting forth the findings of fact upon which the decision is based, together with the reasons for the decision." MCL 421.33(1). Appeals

---

shall be a redetermination affirming the determination and the appeal from the denial shall be an appeal from that affirmance.").

[6] The one-year limitation applied at all times relevant here. Public Act 232 of 2017 extended this limitation to 3 years if the "original determination involved a finding of fraud . . . ." MCL 421.32a(2), as amended by 2017 PA 232.

10

can be taken from the ALJ's decision to the Michigan Compensation Appellate Commission (MCAC)[7] and then from the MCAC to the circuit court. MCL 421.34; MCL 421.38.

With this understanding of the MESA, we turn to the disputed questions.

## II. BASIC FACTS AND PROCEDURAL HISTORY

Claimant-appellants Frank Lucente and Michael Herzog filed applications for unemployment insurance benefits. The Agency determined that benefits were due, and the appellants began the every-other-week process of certifying for benefits.

Both appellants became employed full-time after the initial approval of their claims. This new employment made them ineligible to receive further benefits. See MCL 421.28(1) ("An *unemployed* individual is eligible to receive benefits with respect to any week . . . ."). But they continued to claim benefits and, in doing so, provided inaccurate responses to certification questions concerning their new employment. As a result, the Agency continued to provide benefits as though the appellants were unemployed.

Eventually the Agency discovered the overpayments and suspected fraud. The Agency issued documents entitled "Notice[s] of Redetermination." Two notices were issued to each appellant. One of the notices described the appellant's new employment and explained that it made the appellant ineligible to receive the already-paid benefits. The other notice alleged that the appellant had intentionally concealed their new employment from the Agency (on the basis of the answers provided while certifying). The notices

---

[7] The MCAC has since been replaced, in relevant part, by the Unemployment Insurance Appeals Commission. See Executive Reorganization Order No. 2019-13.

11

further explained that the appellants had the right to *appeal* these "redeterminations" under § 33 and provided instructions on how to exercise that right. The Agency also mailed each appellant a separate document that stated the appellants' repayment obligations: restitution for the overpayment and financial penalties for the fraud.

Both sets of notices were issued within a year of the benefit payments at issue but more than 30 days after the last payment.[8] The appellants appealed both of the "redeterminations," as the MESA allows. MCL 421.33.[9]

In *Lucente*, the ALJ affirmed both of the Agency's November 30, 2010 redeterminations following a hearing at which Lucente testified, but the MCAC reversed. Regarding the finding of ineligibility due to full-time employment, the MCAC concluded that the November 30, 2010 redetermination was not a valid "redetermination" unless the payment of benefits was considered an original determination that Lucente was unemployed for those weeks. See MCL 421.32(f) ("The issuance of each benefit check shall be considered a determination by the unemployment agency that the claimant receiving the check was covered during the compensable period, and eligible and qualified

---

[8] The notices in *Lucente* were issued on or around November 30, 2010. The corresponding overpayments (totaling $4,794) and fraud penalties ($18,276) were for benefits that Lucente received in the benefit weeks ending February 20, 2010 through June 19, 2010.

The notices in *Herzog* were issued on October 11, 2017. The corresponding overpayments (totaling $1,810) and fraud penalties ($7,240) were for benefits that Herzog received in the benefit weeks ending October 15, 2016, through November 12, 2016.

[9] Lucente appealed the November 30, 2010 redeterminations in 2016. The Agency denied those appeals as untimely because they were not filed within the 30-day period described in MCL 421.32a. The ALJ agreed with Lucente that there was "good cause" for his late appeals. See note 5 of this opinion. Herzog's appeals were timely.

12

for benefits."). The MCAC further reasoned that the redetermination (if in fact it was a "redetermination") wasn't issued within 30 days of any benefit check and the Agency had failed to establish (or even assert) "good cause" for reviewing a prior determination outside the 30-day window for a timely protest.[10]  See MCL 421.32a(1) and (2).  The MCAC suggested that the Agency could have addressed the alleged ineligibility in an original "determination" that covered all the benefit weeks at issue but that its failure to do so required the commission to set aside the ALJ's decision finding Lucente ineligible.

In a separate opinion that addressed the alleged fraud, the MCAC similarly concluded that the Agency's failure to issue an original "determination" on the issue of fraud was grounds for setting aside that "redetermination."  In addressing the Agency's contention that the benefit check could serve as the original determination for the fraud decision, see MCL 421.32(f), the MCAC explained that an allegation of intentional misrepresentation "does not relate to whether or not the claimant was eligible or qualified during any period of time."

In *Herzog*, the ALJ issued an order setting aside both "redeterminations" prior to the scheduled hearing.  The order cited the Agency's failure to issue original "determinations" on eligibility and fraud.  The MCAC affirmed in a single opinion that adopted the ALJ's factual findings and conclusions of law.

In each case the Agency appealed the MCAC's decisions in the circuit court, which affirmed the MCAC.

---

[10] The issue of "good cause" for Agency-initiated review beyond the 30-day period was not addressed at the administrative hearing or in the ALJ's written decision.

The Agency sought leave to appeal in the Court of Appeals, which granted the applications, consolidated the appeals, and in a published opinion "conclude[d] that in each consolidated case, the circuit court did not apply the correct legal principles when it affirmed the decisions of the MCAC." *Dep't of Licensing & Regulatory Affairs/Unemployment Ins Agency v Lucente*, 330 Mich App 237, 266; 946 NW2d 836 (2019).[11]

The panel held that the Agency's identification of its decisions as "redeterminations" was not grounds for setting aside the decisions. *Id*. at 259-260, 264, 266. The panel reasoned that the appellants hadn't suffered any prejudice as a result of the Agency's failure to first issue determinations because the redeterminations adequately described the reason for the appellants' ineligibility and the alleged fraud (their full-time employment and failure to disclose it), stated the relevant time period, informed the appellants what they owed in restitution and penalties, and explained that the appellants could appeal the "redeterminations." *Id*.

Addressing the claimants' argument that the Agency must issue a "redetermination" within 30 days of the underlying determination, the panel held that in both cases the Agency was *not* proceeding under § 32a but rather § 62; thus, the Agency wasn't constrained by the time limit for issuing "redeterminations." *Id*. at 257-258, 263.

---

[11] The Court of Appeals consolidated these two cases along with a similar appeal involving a third claimant. The Court of Appeals' analysis and conclusion with respect to the third claimant was substantially the same as these cases. That claimant did not apply for leave to appeal in this Court.

14

We granted the appellants' joint application for leave to appeal to decide two issues:

whether the Court of Appeals erred in its analysis of §§ 32, 32a, and 62 of the Michigan Employment Security Act of 1936 (MESA), MCL 421.1 *et seq.*, when it held that: (1) the Unemployment Insurance Agency is not required to comply with the time requirements set forth in § 32a when seeking to recoup payment of fraudulently obtained benefits under § 62 of the Act; and (2) the label that the agency used on its decisions was not determinative of its ability to seek to recoup improperly obtained benefits. [*Dep't of Licensing & Regulatory Affairs/Unemployment Ins Agency v Lucente*, 505 Mich 1127, 1127 (2020).]

## III. APPLICABLE STANDARDS OF REVIEW

In reviewing administrative adjudication decisions, our task is " 'to determine whether the lower court[s] applied correct legal principles and whether [they] misapprehended or misapplied the substantial evidence test to the agency's factual findings[.]' " *Hodge v US Sec Assoc, Inc*, 497 Mich 189, 194; 859 NW2d 683 (2015) (citation omitted). Whether an administrative agency exceeded its scope of authority or misapplied the law are questions of law that are reviewed de novo. See *In re Reliability Plans of Electric Utilities for 2017-2021*, 505 Mich 97, 118; 949 NW2d 73 (2020). Questions of statutory interpretation are also reviewed de novo. *Id*.

## IV. DISCUSSION

The appellants present two reasons for reinstating the MCAC's decisions.

The first concerns timeliness. Quoting the first sentence of MCL 421.32(f)—"[t]he issuance of each benefit check shall be considered a determination by the unemployment agency that the claimant receiving the check was covered during the compensable period, and eligible and qualified for benefits"—the appellants argue that the decisions finding they received benefits while working full-time were "redeterminations" of the earlier

15

payments (and not mislabeled "determinations") and therefore subject to the time limitations in § 32a. And because the Agency didn't assert "good cause" for Agency-initiated review beyond the 30-day protest period, the "redeterminations" finding them ineligible (not "unemployed") were untimely. See MCL 421.32a(2). Regarding the "redeterminations" finding fraud, the appellants claim these "redeterminations" are untimely for the same reason and, further, that the Agency cannot impose penalties for fraud unless there is a valid "redetermination" finding them not entitled to the benefit, and there was not.

The Court of Appeals rejected this first argument because it concluded that the Agency was proceeding under § 62, not § 32a, and that the "Notice[s] of Redetermination" were properly characterized as timely (but mislabeled) determinations under § 62. *Lucente*, 330 Mich App at 257-258, 263-264.

Accepting the Court of Appeals' recharacterization of the Agency's process as having taken place under § 62 and mislabeled "redeterminations" instead of "determinations," the appellants next argue that the Agency's use of "redeterminations" wasn't simply a labeling oversight with no substantive consequences. By issuing "redeterminations," the argument goes, the Agency skipped a step that the MESA requires—original determinations on the appellants' ineligibility and the alleged fraud—depriving the appellants of their right to file a protest and have the Agency review its decisions before any appeals.

In other words, the appellants accuse the Agency of having its cake and eating it too. Either the decisions are untimely "redeterminations," or the Agency failed to follow the statutory process for making a valid "determination."

16

## A. SECTION 62 REQUIRES THE AGENCY TO ISSUE ORIGINAL "DETERMINATIONS" ON OVERPAYMENTS AND FRAUD

Starting with § 62.

MCL 421.62(a) has long permitted the Agency to recover already-paid benefits when the Agency "*determines* that a person has obtained benefits to which that person is not entitled . . . ." MCL 421.62(a), as amended by 1995 PA 125; MCL 421.62(a), as amended by 2016 PA 522. And § 62(b) provides that when the Agency "*determines* that a person has intentionally made a false statement or misrepresentation or has concealed material information to obtain benefits," the person shall have their right to benefits canceled "in addition to any other applicable penalties," e.g., the penalties for fraud described in MCL 421.54. MCL 421.62(a), as amended by 1995 PA 125; see also MCL 421.62(a), as amended by 2016 PA 522. Significantly, this language refers to the Agency making a "determination" that the claimant received an overpayment or engaged in fraud.

A "determination" under § 62 is distinguishable from a "redetermination" under § 32a. And the MESA plainly contemplates the issuance of the former before the latter. As § 62(c) states, "any *determination* made . . . under this section [62] is final unless an application for a *redetermination* is filed in accordance with section 32a." (Emphasis added.)

In light of this language, and mindful of the different protest and appeal processes described in §§ 32a and 33, we believe the Agency must issue an original "determination" that either requires restitution for an overpayment or assesses penalties for fraud. To the extent these appellants' arguments can be construed as requiring the Agency to first make

17

a "redetermination" on these issues under § 32a, that interpretation is incompatible with the text of § 62.

Our conclusion is reinforced by the MESA's various time constraints for Agency action. During the periods here at issue, § 62(a) conditioned the Agency's ability to recover an overpayment on its issuing a "determination requiring restitution" within three years "after the date of receipt of the improperly paid benefits[.]" MCL 421.62(a), as amended by 1995 PA 125;[12] see also MCL 421.62(a), as amended by 2016 PA 522. This is in conflict with the much shorter time limits for making a "redetermination" under § 32a. That is, if the Agency must first make a "redetermination" of the benefit payment before making a "determination" that the claimant received a benefit to which they were not entitled (i.e., a "determination requiring restitution"), then the three-year limit described in § 62(a) is effectively nullified by the much shorter time limits described in § 32a.

For these reasons, we agree with the Court of Appeals that § 62 authorizes the Agency to make original *determinations* imposing restitution for an overpayment or penalties for fraud. See *Lucente*, 330 Mich App at 258 ("To impose on the Agency, when proceeding under § 62, the additional procedural and time requirements of § 32a would create requirements not imposed by the Legislature."). But our agreement with the Court of Appeals' judgment ends there.

---

[12] This version of the MESA gave the Agency up to six years to make a determination under § 62(a) if the case involved fraud under § 54. This separate six-year-for-fraud time limit was eliminated before the decisions in Herzog's case. See 2016 PA 522.

18

## B. A DECISION REQUIRING RESTITUTION OR ALLEGING FRAUD CANNOT BEGIN WITH A "REDETERMINATION" UNDER § 32a

We next consider the appellants' argument that the Agency did *not* mislabel its decisions as "redeterminations" and that the true mistake relates to the timeliness of the decisions.

This argument is premised on statutory language that is now located at § 32(f). This subsection provides in full:

> The issuance of each benefit check shall be considered a determination by the unemployment agency that the claimant receiving the check was covered during the compensable period, and eligible and qualified for benefits. A chargeable employer, upon receipt of a listing of the check as provided in section 21(a), may protest by requesting a redetermination of the claimant's eligibility or qualification as to that period and a determination as to later weeks and benefits still unpaid that are affected by the protest. Upon receipt of the protest or request, the unemployment agency shall investigate and redetermine whether the claimant is eligible and qualified as to that period. If, upon the redetermination, the claimant is found ineligible or not qualified, the unemployment agency shall proceed as described in section 62. In addition, the unemployment agency shall investigate and determine whether the claimant obtained benefits for 1 or more preceding weeks within the series of consecutive weeks that includes the week covered by the redetermination and, if so, shall proceed as described in section 62 as to those weeks. [MCL 421.32(f), as amended by 2013 PA 144.][13]

Focusing on the phrase "eligible and qualified for benefits," the appellants urge that the "Notice[s] of Redeterminations" here are properly viewed as *untimely* "redeterminations" of the "determination" created by the benefit payment.

---

[13] Public Act 229 of 2020 added the following language at the end of § 32(f): "Notwithstanding any other provision of this act, for benefits charged after March 15, 2020 but before January 1, 2021, an employer has 1 year after the date a benefit payment is charged against the employer's account to protest that charge." See also 2020 PA 258 (substituting "January 1, 2021" with "April 1, 2021").

19

We address this argument with respect to each "redetermination" separately—that these appellants were not "unemployed" and owe restitution for the overpayments, and that they committed fraud and are subject to fines and penalties.

### 1.  A BENEFIT CHECK IS NOT A "DETERMINATION" ON THE ISSUE OF FRAUD

Starting with the "redeterminations" accusing the appellants of fraud and imposing fines and penalties under §§ 54 and 62(b).  As the MCAC rightly pointed out in *Lucente*, the issue of fraud "does not relate to whether or not the claimant was eligible or qualified during any period of time."  Whether a claimant satisfies the eligibility criteria described in § 28(1) (or might be disqualified under § 29) is distinct from whether the claimant has "*willfully* violate[d] or *intentionally* fail[ed] to comply with any of the provisions of [the MESA]," MCL 421.54(a), or whether the claimant has "[made] a false statement or representation *knowing it to be false*, or [has] *knowingly and willfully with intent to defraud* fail[ed] to disclose a material fact," MCL 421.54(b).  The latter involves a culpable mental state; the former does not.

Our precedent supports this understanding of the MESA.  In *Royster v Employment Security Comm*, 366 Mich 415; 115 NW2d 106 (1962), the plaintiff filed a claim for unemployment benefits with the benefit year commencing on January 12, 1958.  On March 6, 1959, more than a year after the plaintiff received a benefit check, the employer charged for the benefit discovered that it had paid the plaintiff wages for the same week as the benefit. The Agency later issued a decision finding that the plaintiff had intentionally failed to disclose his earnings for the week ending January 25, 1958, resulting in an overpayment.

20

*Royster*, 366 Mich at 417-418. The plaintiff challenged the Agency's decision by arguing

that, pursuant to MCL 421.21(a),

> the [Agency's] issuance and providing of a copy of [the] benefit check to the employer constitutes a determination of the charge to the rating account . . . . Then plaintiff stresses that section 32a[14] limits to 1 year, after such mailing

---

[14] The relevant statutory provisions of the MESA then in existence provided as follows:

CLS 1956, § 421.21, as amended by PA 1957, No 311, . . . provides in subdivision (a):

> "The commission shall currently provide each employer with copies of the benefit checks charged against his rating account. Such copies shall show the name and social security account number of the payee, the amount paid, the date of issuance, the week of unemployment for which the check was issued, the name or account number of the chargeable employer, upon request a code designation of the place of employment by the chargeable employer, and such additional information as may be deemed pertinent, and such copies shall constitute a determination of the charge to the rating account. Such determination shall be final unless further proceedings are taken in accordance with section 32a of this act."

CLS 1956, § 421.32a, as amended by PA 1957, No 311 . . . , provides, in part:

> "The commission shall upon application by an interested party filed within 15 days after the mailing of a notice of determination, or may upon its own motion within said period, review any determination and thereafter issue a redetermination affirming, modifying or reversing the prior determination and stating the reasons therefor. The commission shall promptly notify the interested parties of such redetermination which shall become final unless within 15 days after the mailing of a notice thereof an appeal is filed for a hearing on such redetermination before a referee in accordance with the provisions of section 33 of this act: Provided, That the commission may, for good cause, including any administrative clerical error, reconsider any prior

21

to the employer, the period within which a commission redetermination of eligibility may be made. Here it did not occur until after [the employer's protest] on February 4, 1959. At that time, says plaintiff, no jurisdiction longer remained in the commission to make a redetermination. [*Id*. at 419-420.]

The employer rejoined that the Agency *did* have jurisdiction, even though its decision issued more than a year after the benefit was paid. Focusing on the statutory phrase "no such reconsideration shall be made after 1 year from the date of mailing of the original determination *on the disputed issue*," see MCL 421.32a(2), the employer contended that "on the disputed issue" referred to the plaintiff's intentional concealment of his earning (fraud), which was not "at issue" when the payment was made. We agreed:

> Chrysler says that the matter of plaintiff's intentional concealment of his earnings for the week ending January 25, 1958, is now the disputed issue but was not at issue at the time when the January 29, 1958, original determination of eligibility was made by giving him a benefit check for $44 and sending Chrysler a copy. Plaintiff responds that the issue, both at the time the original determination was made and after Chrysler's February 4, 1959, protest and request for redetermination, was whether plaintiff was eligible for benefits for the week ending January 25, 1958. To that, Chrysler says that if that view be adopted, then there is always a disputed issue at the time of original determination and issuance of a benefit check and mailing of copy of same to employer, and that, hence, the words "on the disputed issue" are useless and redundant in the statute, because use of the term "original determination" would have sufficed to fix the time for commencement of the 1-year limitation period, to which the modifying quoted words then would add nothing. So, says Chrysler, the presently disputed issue is whether plaintiff intentionally concealed his earnings for the week in question, and that it

---

> determination or redetermination after the 15-day period has expired and issue a redetermination affirming, modifying or reversing the prior determination or redetermination, but no such reconsideration shall be made after 1 year from the date of mailing of the original determination on the disputed issue."
> [*Royster*, 366 Mich at 418-419.]

22

became the disputed issue only after [Chrysler's] protest on February 4, 1959.

* * *

*The words "disputed issue," as used in section 32a, refer to a contested issue or a matter in dispute between the employer and the commission. In such disputed matters relief must be requested within 15 days or within 1 year for good cause shown. In our opinion matters not in dispute, such as payments voluntarily made and accepted, do not fall within the restrictions of section 32a.* [*Id*. at 420-421 (quotation marks and citations omitted; emphasis added).]

While the language has changed slightly, the MESA still refers to Agency-initiated "redeterminations" as applying where there is a "disputed issue." See MCL 421.32a(2) ("A reconsideration shall not be made unless the request is filed with the unemployment agency, or reconsideration is initiated by the unemployment agency with notice to the interested parties, within 1 year after the date of mailing or personal service of the original determination *on the disputed issue . . . .*") (emphasis added). As in *Royster*, the issue of fraud was *not* disputed at the time these appellants received benefits; the Agency first alleged fraud when it issued the "Notice[s] of Redetermination."

For these reasons, we disagree with the appellants' characterization of the Agency's fraud decisions as untimely but otherwise valid "redeterminations." The Agency must issue an original "determination" when it is alleging that a claimant engaged in fraud.

2. THE AGENCY WAS REQUIRED TO ISSUE ORIGINAL "DETERMINATIONS" ADDRESSING THE APPELLANTS' INELIGIBILITY

The interplay between § 32(f) and the "redeterminations" finding these appellants ineligible (not "unemployed") presents a more difficult question.

At first glance, the language of § 32(f) would seem to support the view that the payment of benefits is a "determination" that these appellants were "unemployed," because

23

being "unemployed" is a criterion of eligibility. See MCL 421.28(1). But this is incongruous with other language in the MESA. As already explained, § 62 allows the Agency to issue "determinations" that a claimant received a benefit to which they were not entitled. See MCL 421.62(a). An overpayment necessarily involves the payment of a benefit, so whenever the Agency is issuing a "determination requiring restitution" under MCL 421.62(a) that same decision might be described as the Agency "redetermining" any determination on eligibility that is created by the benefit check pursuant to § 32(f). How should the Agency proceed?

We believe that § 32(f)'s reference to a benefit check as a "determination" is best understood when that provision is read as a whole. Reading past the first sentence, the subsection explains that "[a] chargeable employer, upon receipt of a listing of the check as provided in [MCL 421.21(a)], may protest by requesting a redetermination of the claimant's eligibility or qualification as to that period and a determination as to later weeks and benefits still unpaid that are affected by the protest." But no text in § 32(f) refers to Agency-initiated redeterminations under § 32a. Instead, it is the employer's protest of the benefit-check determination that is the triggering event.

This understanding is reinforced by § 32(f)'s reference to the employer's "receipt of a listing of the check as provided in section 21(a) . . . ." That subsection provides:

> The [Agency] shall currently provide each employer with copies or listings of the benefit checks charged against that employer's account. An employer determined by the agency to be a successor employer shall begin receiving the listings effective for weeks beginning after the mailing of the determination of successorship. The copies or listings shall show the name and social security account number of the payee, the amount paid, the date of issuance, the week of unemployment for which the check was issued, the name or account number of the chargeable employer, upon request a code

24

designation of the place of employment by the chargeable employer, and additional information as may be deemed pertinent. The copies or listings shall constitute a determination of the charge to the employer's account. The determination shall be final unless further proceedings are taken in accordance with section 32a.

The [Agency] shall furnish at least quarterly, to each employer, a statement summarizing the total of the benefits charged against the employer's account during the period. If the employer requests, the summary shall be broken down by places of employment.

The [Agency] shall notify each employer, not later than 6 months after the computation date, of his rate of contributions as determined for any calendar year pursuant to section 19. The statement or determination shall be final unless further proceedings are taken in accordance with section 32a. However, on request an employer shall be given an extension of 30 days' additional time in which to apply for the review and redetermination. [MCL 421.21(a).]

Reading § 21(a) together with § 32 brings clarity. Upon the filing of an initial application for benefits, every base-period employer will receive a monetary determination that indicates the claimant's reported reason for separation and the extent to which that employer's unemployment insurance account will be charged for any benefits that might be paid. See MCL 421.32(b). The employer can protest the information reported in the monetary determination, and the employer should do so if it disagrees. MCL 421.32(b); see also MCL 421.32(d). If benefits are paid, the chargeable employer will receive "[the] listing of the check as provided in section 21(a)" and will have the opportunity to "protest by requesting a redetermination of the claimant's eligibility or qualification as to that period and a determination as to later weeks and benefits still unpaid that are affected by the protest." MCL 421.32(f). When such a protest is made, it triggers the application of § 32(f) and the concept of the benefit-check-as-determination. Absent such a protest (as in these cases), the benefit check cannot serve as a "determination" for an Agency-initiated

25

"redetermination" finding that a claimant received benefits to which they were not entitled regardless of whether § 32a's time constraints have been satisfied.

Moreover, construing the MESA as requiring the Agency to issue an original "determination requiring restitution" when it seeks to recover an overpayment (absent an employer's protest under § 32(f)) is consistent with other ways in which a claimant might receive a "benefit to which [the claimant] is not entitled." MCL 421.62(a). For example, a claimant who is approved for benefits and later secures part-time employment might still be "eligible" under the MESA's definition of "unemployed." See MCL 421.48(1). For these claimants, the earning of part-time wages might reduce the amount of benefits they are entitled to in any week, see MCL 421.27(c), but the claimant would remain "eligible and qualified." An overpayment might arise if the claimant misreports their part-time wages (regardless of fraud), and the Agency could pursue restitution by issuing an original determination under § 62(a). Such a decision couldn't be described as a "redetermination" of the benefit-check-as-determination described in § 32(f) because it would not relate to the claimant's eligibility under § 28(a) or a disqualification under § 29.

For these reasons, we conclude that the MESA requires the Agency to proceed by way of an original "determination" when (in the absence of an employer protest) the Agency seeks to establish that a claimant received a "benefit to which [the claimant] is not entitled" and imposes restitution pursuant to MCL 421.62(a).

## C. THE AGENCY'S FAILURE TO ADHERE TO THE STATUTORY PROCESS IS GROUNDS FOR INVALIDATING ITS DECISIONS

Finally, we consider whether the Agency's failure to issue "determinations" is grounds for setting aside the "redeterminations."

26

We first note that in both of these cases the Agency issued the "Notice[s] of Redetermination" well within the three-year time limit described in § 62. Had the Agency's decisions been "determinations" there would no cause for disturbing them. But they were not.

The MESA describes "determinations" and "redeterminations" as distinct decision-making steps. This makes sense given the ordinary understanding of both words: the former necessarily precedes the latter. The distinction is made plain in § 32a: a "redetermination" may "affirm[], modify[], or revers[e] *the prior determination . . . .*" MCL 421.32a(1) and (2) (emphasis added). And though the MESA never provides a comprehensive definition of either term, it repeatedly refers to the process described in § 32a whenever it mentions "redeterminations." See, e.g., MCL 421.14 ("If evidence is presented indicating that an employing unit which has been determined not to be an employer is or was actually an employer, or that services which have been held not to constitute employment are or were actually employment, the previous determination shall be reopened and reconsidered by the commission *in accordance with section 32a and a redetermination made* as *the facts and law require . . . .*"); MCL 421.32(e) ("The claimant or interested party may file an application with an office of the unemployment agency for *a redetermination in accordance with section 32a.*"); MCL 421.33(1) ("An appeal *from a redetermination issued by the agency in accordance with section 32a . . .* shall be referred to the Michigan administrative hearing system for assignment to an administrative law judge."); MCL 421.62(c) ("Any determination made by the unemployment agency under this section is final *unless an application for a redetermination is filed in accordance with section 32a.*").

27

The Agency accepts this basic distinction between "determinations" and "redeterminations." Perhaps recognizing the problem created by its failure to assert "good cause" when it issued these decisions, the Agency's position in this Court is that these "Notice[s] of Redetermination" were "for all intents and purposes . . . original written 'determination[s]' on the ineligibility and fraud issues[.]" Nevertheless, the Agency contends that invalidating the decisions because they were "redeterminations" would "elevate form over substance." The Agency takes the view that it doesn't really matter if it begins with a "redetermination" because there is always the opportunity for de novo review by an ALJ. See MCL 421.33.

The Agency's argument *might* be a good one if the question was whether these appellants received constitutionally adequate process. After all, "the right to a hearing before an unbiased and impartial decisionmaker is a basic requirement of due process." *Livonia v Dep't of Social Servs*, 423 Mich 466, 508; 378 NW2d 402 (1985).

But that's not the question we are answering. Just as we require claimants and chargeable employers to follow the procedural and substantive requirements of the MESA, so too must the Agency. See *In re Reliability Plans*, 505 Mich at 119; see also *Coffman v State Bd of Examiners in Optometry*, 331 Mich 582, 589; 50 NW2d 322 (1951) (explaining that an administrative agency cannot "enlarge its authority or exceed the powers given to it by the statute, the source of its power") (quotation marks and citations omitted).

Here, the MESA provides that "the unemployment agency *shall review* any determination" whenever an interested party makes a timely protest. MCL 421.32a(1) (emphasis added). The determination-and-protest step is not a mere perfunctory step in perfecting the claimant's right to appeal—the language plainly contemplates *some* degree

of agency review in response to a protest, even if the Agency ultimately affirms the prior determination or transfers the case for an administrative hearing. Such review is foreclosed if the Agency can simply begin with a "redetermination."[15]

The essence of the Agency's argument is that claimants don't suffer discernable prejudice if the Agency begins at the "redetermination" step, so long as the claimant is adequately apprised of the issue and their right to appeal the decision. But if that is correct, the Agency could *always* begin at the "redetermination" step, without consequence. If an interested party appeals the redetermination and complains about the lack of an initial determination, the Agency could simply respond that the administrative hearing cures any error. And if a party aggrieved by the "redetermination" fails to take a timely appeal, then the Agency would presumably argue that its "redetermination" is final and a party who is informed of their right to appeal yet fails to exercise it cannot complain about the outcome. See MCL 421.32a(1) ("[T]he redetermination is final unless within 30 days after the mailing or personal service of a notice of the redetermination an appeal is filed with the unemployment agency for a hearing on the redetermination before an administrative law judge . . . ."); see also MCL 421.32a(3).

---

[15] While Justice ZAHRA urges this Court to "[l]ook[] beyond the notices' labels and focus[] instead on their substance," it is far from clear that the Agency understood its decisions to be original "determinations." While the MESA permits the Agency to respond to a timely protest by reviewing the decision and then "transfer[ring] the matter to an administrative law judge for a hearing" in lieu of issuing a redetermination, MCL 421.32a(1), the Agency does not identify anything in the record that would indicate it exercised such discretion in these cases. Notably, the notices sent by the Agency provided different instructions on how to protest a "determination" versus appealing a "redetermination."

29

But when we interpret a statute, we try to avoid an interpretation that makes nugatory or surplusage any part of it. See, e.g., *Jesperson v Auto Club Ins Ass'n*, 499 Mich 29, 34; 878 NW2d 799 (2016) ("[W]hen determining [legislative] intent we must give effect to every word, phrase, and clause in a statute and avoid an interpretation that renders nugatory or surplusage any part of a statute.") (quotation marks and citation omitted). The Agency's "no harm, no foul" argument and the Court of Appeals' endorsement of it are contrary to this basic principle.

We can't ignore the statutory right to protest a "determination" simply because other sections of the MESA provide further (and arguably greater) process. Affirming the reasoning of the Court of Appeals would allow the Agency to begin at the "redetermination" step without ever issuing a "determination" in every instance. And while a claimant's right to protest the original determination and have the Agency review its decision might seem less important than the administrative hearing that follows, the wisdom of the statutory process is a question for the Legislature.

The MCAC correctly concluded that the Agency must issue a "determination" before it issues a "redetermination" and that the failure to do so is grounds for setting aside a determinationless "redetermination." To the extent the Court of Appeals held otherwise, its reasoning is rejected as incompatible with the MESA.

## V. CONCLUSION AND RELIEF

We agree with the Court of Appeals that § 62 authorizes the Agency to issue original fraud and restitution determinations that are not subject to the constraints of MCL 421.32a.

30

We disagree, however, that the Agency's decision to issue "redeterminations" in these cases was of no substantive effect.

We hold that the Agency must issue an original determination alleging fraud *and* that the Agency's failure to do so is grounds for invalidating the "redeterminations" in this case. On this issue the payment of benefits cannot serve as an original "determination" on the alleged fraud, and the Agency's issuance of determinationless "redeterminations" deprives claimants of their right to protest.

We likewise conclude that the Court of Appeals erred in its analysis of the "redeterminations," finding the claimants not unemployed and imposing restitution for the overpayments. When Agency-initiated review of a past-paid benefit results in a decision that the claimant received benefits during a period of ineligibility or disqualification and owes restitution as a result, the Agency must begin with an original "determination" as described in § 62.

Accordingly, the judgment of the Court of Appeals is reversed.

Bridget M. McCormack
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch (as to Parts I, II, III, IV(A), and V as it relates to MCL 421.62 and determinations concerning fraud and restitution)

31

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

DEPARTMENT OF LICENSING AND
REGULATORY
AFFAIRS/UNEMPLOYMENT
INSURANCE AGENCY,

        Appellee,

v                                                                    No. 160843

FRANK LUCENTE,

        Claimant-Appellant,

and

DART PROPERTIES II, LLC,

        Employer-Appellee.

_____

DEPARTMENT OF TALENT AND
ECONOMIC
DEVELOPMENT/UNEMPLOYMENT
INSURANCE AGENCY,

        Appellee,

v                                                                    No. 160844

MICHAEL HERZOG,

        Claimant-Appellant,

and

CUSTOM FORM, INC.,

        Employer-Appellee.

_____

WELCH, J. (*concurring in part, dissenting in part, and concurring in the judgment*).

I agree with much of the majority opinion and concur in the judgment. I agree that allegations of fraud and the imposition of restitution are distinct from the redetermination of a claimant's eligibility or qualification for benefits, and thus such matters and associated penalties must be raised in an original determination invoking MCL 421.62 and MCL 421.54. Accordingly, I join Parts I, II, III, and IV(A) of the majority opinion, and Part V as it relates to MCL 421.62 and determinations concerning fraud and restitution.

On the other hand, I read certain portions of the Michigan Employment Security Act (MESA), MCL 421.1 *et seq.*, differently from my colleagues who have joined the majority opinion in full, and this causes me to approach certain aspects of these cases differently. I do not agree that a benefit check is considered a determination under MCL 421.32(f) only for the purposes of an employer filing a protest after receiving the listing of the benefit check. Rather, I believe the statute is clear that a benefit check can always serve as an original determination as to eligibility and qualification to receive benefits in an unemployment proceeding, even if the action is driven by the Unemployment Insurance Agency (UIA) as opposed to the employer. Nor do I agree with the view that the UIA is unable to self-initiate a redetermination of a claimant's eligibility for benefits under MCL 421.32a(1) or (2) after the UIA obtains information showing that an individual was paid but not eligible for such benefits. In that case, I do not believe a new original determination is required as a benefit check in fact serves as an original determination. As a result of these disagreements, and as explained more fully below, I am unable to join Part IV(B) or (C) of the majority opinion in full.

## I. FACTS AND ADMINISTRATIVE PROCEDURAL BACKGROUND

I join Part II of the majority opinion because it is an accurate statement of the "basic facts and procedural history," but I believe the statement is incomplete as to certain relevant details and nuances. Accordingly, I offer the following for additional context that is relevant to my understanding of these cases.

### A. LUCENTE

Claimant Frank Lucente applied for extended unemployment benefits on February 2, 2010, and he was approved and received benefits from the UIA. See MCL 421.64. On February 16, 2010, Lucente obtained full-time employment with Dart Properties II, LLC. Lucente continued to certify that he was unemployed and without income despite having obtained full-time employment. Accordingly, the UIA continued to pay benefits to Lucente through the week of June 19, 2010, when Lucente then stopped certifying.

On or about July 7, 2010, the UIA mailed a request for information to Lucente's address on file and to Dart Properties, which soon responded and notified the UIA of Lucente's employment. On or about November 30, 2010, the UIA sent two documents labeled "Notice of Redetermination" to Lucente's address on file.

> The first redetermination (the eligibility redetermination) involved Lucente's eligibility for unemployment benefits from February 20, 2010, through June 19, 2010, and stated:

>> YOU WORKED FULL-TIME FOR DART PROPERTIES II LLC BEGINNING 2/16/10. AS SUCH, YOU ARE INELIGIBLE FOR BENEFITS UNDER SECTION 48 [MCL 421.48] OF THE [MESA]. YOU WERE PAID, SO RESTITUTION IS REQUIRED, AS SHOWN, UNDER SECTION 62 [MCL 421.62] OF THE ACT.

3

The second redetermination (the fraud redetermination) involved Lucente's use of fraud to improperly obtain unemployment benefits from February 20, 2010, through June 19, 2010, and stated:

> YOUR ACTIONS ARE CONSIDERED TO HAVE BEEN INTENTIONAL BECAUSE YOU FAILED TO NOTIFY THIS AGENCY THAT YOU WERE WORKING FULL-TIME AND CONTINUED TO COLLECT BENEFITS FOR FOUR MORE MONTHS. YOU INTENTIONALLY WITHHELD INFORMATION TO OBTAIN BENEFITS. YOU ARE DISQUALIFIED UNDER SECTIONS 62(B) AND 54(B) [MCL 421.54(b)] OF THE [MESA].

> [*Dep't of Licensing & Regulatory Affairs/Unemployment Ins Agency v Lucente*, 330 Mich App 237, 242; 946 NW2d 836 (2019) (alterations in original).]

The UIA also sent a "Non-Protestable Summary of Previously (Re) Determined Restitution" on December 1, 2010, stating that Lucente was obligated to repay $4,794 in wrongfully received benefits and $18,276 in penalties for wrongfully obtained benefits from February 20, 2010 through June 19, 2010.

I agree with the majority opinion's summary of the litigation history of Lucente's case but wish to add two additional details. First, if the notices sent to Lucente were redeterminations issued under § 32a(2), the UIA would have needed to show "good cause" for failing to raise the issue within 30 days of the prior determination that was being considered. This issue was not raised during the initial administrative proceedings, nor was it discussed by the administrative law judge (ALJ) or the UIA's representative during the hearing. Second, it appears that the first time the UIA argued that its redeterminations should be considered mislabeled determinations was in the appeal to the circuit court.

4

## B. HERZOG

In February 2016 claimant Michael Herzog applied and was approved for unemployment benefits. For reasons that are not clear from the record, Herzog did not receive his first benefit check until June 2016. On October 10, 2016, Herzog obtained full-time employment with Custom Form, Inc. Despite this, Herzog continued to certify that he was unemployed and continued to receive benefits for the period covering October 15, 2016, through November 12, 2016.

On October 11, 2017, the UIA sent Herzog a "Notice of Redetermination" for Case No. 0-009-757-100, which stated the following:

> There is a question in regard to your employment status.

> You began working full-time for CUSTOM FORM, INC from October 10, 2016 through March 3, 2017. You are not eligible for benefits while working full-time.

> You are ineligible for benefits under MES Act, Sec. 48 from October 9, 2016 through March 4, 2017. You will not receive benefit payments during this period.

> \* \* \*

> Calculation of interest and penalty amount is shown later on this form.

> If you disagree with this redetermination, refer to Appeal Rights" [sic] on the reverse side of this form.

Herzog received a second "Notice of Redetermination" from the UIA, also dated October 11, 2017, for Case No. 0-009-757-101, stating as follows:

> This (re)determination is being issued as a result of the determination in case 0-009-757-100 involving Not Unemployed 48.

> You received benefits based on the case referenced above. These payments . . . are now found to be improper because you were found ineligible for benefits due to reporting your earnings improperly.

5

> Your actions indicate you intentionally misled and/or concealed information to obtain benefits you were not entitled to receive. Benefits will be terminated on any claims active on October 8, 2016.
>
> You are disqualified for benefits under MES Act Sec. 62(b). Restitution is due under MES Act, Sec. 62(a). The wages used to establish your claim are cancelled and no further benefits will be paid based on those wages. In addition, you are required to pay the penalty assessed based on this determination under MES Act, Sec. 54(b). . . .

\* \* \*

> Calculation of interest and penalty amount is shown later on this form.

In a separate document dated October 11, 2017, titled "Restitution" and citing "MES Act Sec. 62(a)," the UIA asserted that Herzog was obligated to repay $1,810 in wrongfully received benefits and $7,240 in penalties.

Unlike Lucente, Herzog promptly contested the redeterminations. As later explained in two letters sent to the UIA, Herzog claimed a mistaken understanding of how many weeks of benefits he was entitled to, agreed to make payments for the principal amount, challenged the fraud penalties, and invoked his right to appeal. An ALJ entered an order setting aside the redetermination notices before the scheduled hearing. As in Lucente's case, the UIA did not argue that the redeterminations should be treated as mislabeled determinations until the appeal to circuit court.

## II. LEGAL ANALYSIS

I join the majority opinion's overview of the MESA in Part I and agree with the standard of review provided in Part III. I further agree with the majority opinion's conclusion that § 62 authorizes that UIA "to make original *determinations* imposing restitution for overpayment or penalties for fraud," and thus join Part IV(A). While I agree with the conclusion reached in Part IV(B)(1) of the majority opinion, I disagree that *Royster*

6

*v Employment Security Comm*, 366 Mich 415, 115 NW2d 106 (1962), is applicable to this matter. I also cannot join Part IV(B)(2) of the majority opinion because I do not agree that benefit checks are not determinations that can be reconsidered without an employer protest filed under § 32(f) or that a claimant's eligibility for benefits cannot be reconsidered through an agency-initiated redetermination under § 32a(1) or (2). I also join Part IV(C) of the majority opinion as to the fraud and restitution issues and to the extent that it requires the UIA to respect the legal and procedural distinctions between determinations and redeterminations. However, because I conclude that the UIA could redetermine the claimants' eligibility for benefits in these cases under § 32a(2) upon a showing of good cause, and because this issue has not been litigated, I would remand each case for further proceedings before an ALJ.

A. THE MESA PROVIDES A SAFETY NET DESIGNED TO MITIGATE THE FINANCIAL HARMS OF INVOLUNTARY UNEMPLOYMENT WHILE AVOIDING FRAUDULENT ABUSES OF THE SYSTEM

In 1936, during the Great Depression, the Michigan Legislature created the MESA to "protect the welfare of the people of this state through the establishment of an unemployment compensation fund," to "provide for the protection of the people of this state from the hazards of unemployment," and to "provide for . . . compliance with the provisions of the social security act and the Wagner-Peyser act passed by the Congress of the United States of America[.]" 1936 (Ex Sess) PA 1, title. The Legislature summarized

7

these purposes as an explicit statement of public policy in 1936 (Ex Sess) PA 1, § 2, which was codified at MCL 421.2(1).[1]

Michigan's modern unemployment insurance benefits program was born from and is governed by the MESA. It was thus designed as a social safety net "primarily for the benefit of persons involuntarily unemployed. Its purpose is to lighten the burden of economic insecurity on those who become unemployed through no fault of their own." *Empire Iron Mining Partnership v Orhanen*, 455 Mich 410, 417; 565 NW2d 844 (1997). "As the MESA is a remedial statute, it should be liberally construed to achieve its intended goal." *Id*. These consolidated cases demonstrate the tension between the state's administration of the unemployment insurance program and its efforts to prevent fraudulent abuses of the program.

## B. REDETERMINATION CHECKS ARE DETERMINATIONS OF A CLAIMANT'S CONTINUED ELIGIBILITY AND QUALIFICATION TO RECEIVE BENEFITS

Lucente's and Herzog's challenged redeterminations were issued on or about November 30, 2010, and October 11, 2017, respectively. At those times, the MESA provided that once "a determination, redetermination, or decision is made that benefits are due an unemployed individual," those benefits "become payable . . . and continue to be payable to the unemployed individual," subject to monetary entitlement limitations, "until the determination, redetermination, or decision is reversed, [or] *a determination, redetermination*, or decision on a new issue *holding the individual disqualified or ineligible*

---

[1] Nonsubstantive changes were made to MCL 421.2(1) in 2011, and a second stated policy was codified at MCL 421.2(2) concerning the "issuance of bonds by the Michigan finance authority" to finance the state's unemployment trust fund. 2011 PA 268.

*is made . . . .*" MCL 421.27(a)(1) (emphasis added). Claimants who were initially found eligible and qualified to receive benefits were required to certify their continued eligibility and qualification on a biweekly basis by answering various questions that relate to these criteria, such as sources of income, employment status, and availability for work.

During the administrative proceedings, the parties did not dispute that a benefit check constitutes a determination under the MESA. This is unsurprising considering longstanding statutory language on this precise point. "[T]he issuance of each benefit check *shall be considered a determination* by the [UIA] that the claimant receiving the check was covered during the compensable period, and *eligible and qualified for benefits*." MCL 421.32(f) (emphasis added).[2] Upon receiving the listing of the benefit check as required by MCL 421.21(a), a "chargeable employer" has a right to "protest by requesting a redetermination of the claimant's eligibility or qualification as to that period [covered by the benefit check] and a determination as to later weeks and benefits still unpaid that are affected by the protest." MCL 421.32(f); former MCL 421.32(d). Stated differently, an *employer's protest* of a benefit-check determination cannot seek reconsideration of a claimant's eligibility or qualification to receive benefits for periods that preceded the period covered by the benefit check at issue. If the claimant is found ineligible or not qualified because of an employer-protest-triggered redetermination, the UIA is required to proceed as described in § 62. MCL 421.32(f); former MCL 421.32(d).

While this portion of the MESA has been modified and renumbered over time, for more than 50 years § 32 has provided that benefit checks are a "determination" that during

---

[2] The quoted language was moved to MCL 421.32(f) from MCL 421.32(d) in 2013. See 2002 PA 192; 2013 PA 144.

9

the benefit period covered by the check the claimant was "eligible and qualified for benefits." The statutory language does not explicitly limit the legal effect of the first sentence of § 32(f) to that subsection or to circumstances in which only an employer (as opposed to a UIA-initiated action) files a protest. The text following the first sentence in § 32(f) restricts a chargeable employer's right to protest a claimant's eligibility or qualification for benefits to the period covered by the benefit check in question and for future periods. See, e.g., *Roman Cleanser Co v Murphy*, 386 Mich 698, 704-705; 194 NW2d 704 (1972) (holding that an employer could not compel reconsideration of an eligibility determination that preceded the period covered by the protested benefit check). The purpose of the employer protest is to contest the charge against the employer's account, a part of the funding mechanism for the unemployment system, as to that benefit period and future benefit periods. This is done by contesting the former employee's entitlement to benefits for the covered period and future periods. The language used in § 32(f) does not limit the UIA's ability to self-initiate reconsideration of a benefit-check determination as provided for in §§ 32a(1) and (2). As explained in the next section, in addition to the UIA, any interested party[3] (including a claimant) is permitted to request a redetermination of a prior determination, including a benefit-check determination, in accordance with §§ 32 and 32a, subject to express limitations elsewhere in the MESA, such as restrictions placed on employers in § 32(f).

---

[3] The UIA has defined "interested party" to mean "anyone whose statutory rights or obligations might be affected by the outcome or disposition of the determination, redetermination, or decision." Mich Admin Code, R 421.201(1).

This makes sense when one considers the biweekly certification requirements for claimants receiving benefits under the MESA. As § 27(a)(1) recognizes, after the initial monetary determination, a claimant will continue to receive benefits "if the individual *continues to be unemployed and to file claims for benefits*." (Emphasis added.) The certification process and questionnaires are the manner in which claimants continue to file claims for benefits after initially being approved and how claimants demonstrate continued entitlement to receive benefits. As a part of this process, claimants answer questions that relate to things like their sources of income, their employment status, and their availability to work. A claimant's response to a question may lead to follow-up questions. If a claimant's response (a factual assertion) does not affect either eligibility or qualification for benefits, then the UIA will issue a benefit check (a determination under § 32(f)) in the ordinary course. If a claimant's response changes how the MESA applies to the claimant's circumstances, then the UIA may be compelled by law to issue a new determination or a redetermination, either of which may affect a claimant's prior or continued eligibility or qualification to receive benefits.[4]

## C. REDETERMINATION OF ELIGIBILITY

I would analyze the contested notices sent as what they purport to be—redeterminations. I disagree with the majority opinion's conclusion in Part IV(B)(2) that

_____

[4] For example, a claimant could report that they became employed part-time or that they received income from a new source. This may trigger a follow-up question about when the change in circumstance occurred. If the change occurred during a period covered by a prior benefit check, then the UIA may be obligated to redetermine the claimant's eligibility or qualification to receive benefits (or the amount of benefits) during that period and may require a claimant to repay benefits that exceeded what they were entitled to under the MESA. See, e.g., MCL 421.48; MCL 421.27(c).

11

a benefit-check determination cannot serve as the basis for redetermining a claimant's eligibility to receive benefits. I would hold that the redeterminations issued were appropriate, subject to a finding on the timeliness requirement of § 32a(2). In contrast with the numerous provisions of the MESA that authorize different kinds of determinations, *all redeterminations* under the MESA are governed by § 32a.[5] Aside from minor amendments that are not relevant to these cases,[6] § 32a was substantively identical from 2010 through November 2017 and stated the following:

> (1) *Upon application by an interested party for review of a determination*, upon request for transfer to an administrative law judge for a hearing filed with the unemployment agency within 30 days after the mailing or personal service of a notice of determination, *or upon the unemployment agency's own motion within that 30-day period*, *the unemployment agency shall review any determination.* After review, the unemployment agency *shall issue a redetermination affirming, modifying, or reversing the prior determination and stating the reasons for the redetermination*, or may in its discretion transfer the matter to an administrative law judge for a hearing. If a redetermination is issued, the unemployment agency shall promptly notify the interested parties of the redetermination, *the redetermination is final unless within 30 days after the mailing or personal service of a notice of the redetermination an appeal is filed with the unemployment agency for a hearing on the redetermination before an administrative law judge in accordance with section 33*.

> (2) *The unemployment agency may, for good cause*, including any administrative clerical error, *reconsider a prior determination or*

---

[5] As the majority opinion notes, while the MESA does not define the term "determination," it is best understood as "an official decision by the [UIA] that involves agency fact-finding and application of law (the MESA) to those facts." *Ante* at 4. See *Black's Law Dictionary* (11th ed) (defining "determination" as "[t]he act of deciding something officially").

[6] Pursuant to 2011 PA 269, MCL 421.32a was amended to change references to "a referee" to "an administrative law judge" and references to "commission" to "unemployment agency." Section 32a had only been substantively amended twice before 2011, once by 1983 PA 164 and then again by 1996 PA 503. Further amendments that are not at issue in these cases were made by 2017 PA 232, effective July 1, 2018.

*redetermination after the 30-day period has expired and after reconsideration issue a redetermination affirming, modifying, or reversing the prior determination or redetermination, or transfer the matter to an administrative law judge for a hearing. A reconsideration shall not be made unless* the request is filed with the unemployment agency, *or reconsideration is initiated by the unemployment agency with notice to the interested parties, within 1 year from the date of mailing or personal service of the original determination on the disputed issue.* [MCL 421.32a, as amended by 2011 PA 269 (emphasis added).]

A redetermination under the MESA is thus a reversal, affirmation, or modification of a prior determination based on some change in the relevant facts or law. The UIA is generally limited to 30 days to self-initiate reconsideration of a prior determination under § 32a(1), and if it fails to do so within that period, it must establish "good cause"[7] for the delay in accordance with § 32a(2). The MESA further requires the UIA in the case of such delays to initiate its reconsideration *within 1 year* of the mailing or service of the original determination and to provide *notice to the interested parties* that the agency has reconsidered a prior determination. MCL 421.32a(2), as amended by 2011 PA 269 ("A reconsideration *shall not be made unless* [a request is filed], or reconsideration is initiated by the unemployment agency *with notice to the interested parties*, within 1 year from the date of mailing or personal service of the original determination on the disputed issue.").

Juxtaposing § 32a against the variety of potential "determinations" that can be rendered under the MESA, it is clear that a "redetermination" must be preceded by a "determination." In this regard, I agree with the majority opinion. We also recognized the

---

[7] The UIA has promulgated a nonexhaustive list of circumstances that can constitute good cause, including the agency's receiving "additional or corrected information," administrative errors, and various circumstances impeding an interested party's ability to act sooner. Mich Admin Code, R 421.270.

13

distinction between determinations and redeterminations, and the limitations on the latter, in *Roman Cleanser*, 386 Mich at 704-705.[8]  To hold otherwise would fail to give independent meaning to each statutory term and negate the distinction between determinations and redeterminations.  After all, it is "a fundamental principle of statutory construction that '[w]hen the Legislature uses different words, the words are generally intended to connote different meanings.' " *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 369; 917 NW2d 603 (2018), quoting *US Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 14, 795 NW2d 101 (2009).  In this way, MCL 421.32a requires the UIA to make an initial determination as a condition precedent to reconsidering a prior determination and issuing a redetermination.

As I read the statute, there are no limitations in § 32a on the type of determinations that the UIA can reconsider under § 32a(1) or (2) so long as the notice and timing conditions are met.  Thus, in my opinion, unless explicitly prohibited elsewhere in the MESA, the UIA can invoke § 32a(2) to reconsider *any* prior determination on a "disputed issue" within one year if there is good cause for not taking action within 30 days of the original determination on that issue under § 32a(1).

---

[8] In *Roman Cleanser*, we held that an employer's protest of a benefit payment filed under what was then § 32(d) did not authorize or require reconsideration of all prior determinations concerning a claimant's eligibility in the absence of the agency's finding good cause to reopen those earlier payments.  *Id*. at 704-707.  In that case, the agency had expressly stated that it was reconsidering a May 1 benefit check (a determination) and made no mention of the prior March 13 determination.  *Id*. at 706-707.  The protesting employer therefore did not have a right to force the agency to reconsider its earlier decisions about the claimant's eligibility for benefits and was thus limited to only the May 1 determination/benefit check.

14

In light of my conclusion about benefit checks and the lack of subject-matter limitations imposed on agency-initiated redeterminations, I conclude that the UIA did not exceed its authority by reconsidering Lucente's and Herzog's eligibility to receive benefits through redeterminations. Had these redeterminations been made within 30 days of and limited to a specific benefit check, or in Lucente's case his approval for extended benefits, then § 32a(1) would apply. Because of the timing and scope of the redeterminations, the UIA would need to satisfy § 32a(2), which requires the UIA to initiate a redetermination within one year of the "original determination on the disputed issue" if good cause exists.

The majority opinion states that the UIA-initiated redeterminations of eligibility issued in these cases were invalid. But the MESA requires a claimant to continue filing claims for benefits during each biweekly period, MCL 421.27(a)(1), and the UIA requires claimants to answer certification questions related to their continued eligibility as a part of this process. Thus, during each biweekly benefit period, a claimant's continued eligibility and qualification to receive benefits is a "disputed issue" for the purposes of a redetermination under § 32a(2).[9] I would accordingly hold that the UIA may rely on a previously issued benefit check as the original "determination" for the purposes of a UIA-

---

[9] I disagree with the majority opinion's reliance on *Royster*, 366 Mich 415, and the language quoted in that decision from *Lee v Employment Security Comm*, 346 Mich 171, 78 NW2d 309 (1956). The majority opinion relies on the phrase "matters not in dispute, such as payments voluntarily made and accepted, do not fall within the restrictions of section 32a." *Royster*, 366 Mich at 421, quoting *Lee*, 346 Mich at 179. However, a close examination of those opinions makes clear that the phrase was referring to payments made by a chargeable employer into the underemployment system, not to benefit-check payments issued to a claimant. There are additional factual and legal issues that distinguish those cases from the present situations. Accordingly, I do not believe *Royster* or *Lee* is applicable or relevant to these cases.

initiated redetermination of a claimant's eligibility or qualification for benefit under §§ 32a(1) and (2).

I disagree with the majority opinion's attempt to limit the UIA's authority under § 32a(1) or (2) in a manner that is not expressly provided for in the MESA. The conclusion that the UIA lacked authority to redetermine the claimants' eligibility appears to be based on a novel conclusion that the issuance of each benefit check is not a determination as to a claimant's eligibility.[10] As already discussed, § 32(f) states, without limitation, that the issuance of each benefit check is a determination by the UIA that the claimant was "eligible and qualified for benefits" during the relevant period. The majority opinion would limit this language to circumstances in which an employer protests the listing of a benefit check on the basis of a view that "the employer's protest of the benefit-check determination . . . is the triggering event." *Ante* at 24.

But triggering event of what? An employer protest triggers a protest-initiated reconsideration and, if appropriate, further proceedings under § 62. There is no language in § 32(f) preventing the UIA from initiating its own reconsideration of a benefit-check determination or preventing a claimant from challenging the same determination under § 32a. Such a limitation could prevent the UIA from correcting a mistake in the issuance of a benefit check on its own initiative through a redetermination and would instead require a new original determination. I do not believe the MESA compels such a reading, nor do I believe the Legislature intended such a result.

---

[10] Neither the claimants nor the UIA argued that benefit checks are considered determinations only when an employer files a protest.

16

## D. ACCUSATIONS OF FRAUD AND RESTITUTION

Despite my reservations about relying on *Royster*, I agree with the majority opinion that whether Lucente or Herzog *intentionally* concealed information from the UIA was not a "disputed issue" when the initial eligibility determinations or benefit-check determinations were made for the purposes of § 32a(2). Even if the information provided was false or misleading, the *intent* of the claimant is separate and distinct from a claimant's eligibility and qualification to receive benefits based on the information provided and available.

I also agree that § 62 requires the UIA to issue an original determination concerning fraud and restitution. With respect to Lucente's case, in November 2010, MCL 421.62 provided as follows:

> (a) If the commission *determines that a person has obtained benefits to which that person is not entitled, the commission may recover a sum equal to the amount received by 1 or more of the following methods*: . . . The commission *shall not recover improperly paid benefits from an individual* more than 3 years, *or more than 6 years in the case of a violation of section 54(a) or (b)*[11] *or sections 54a to 54c, after the date of receipt of the improperly paid benefits unless*: (1) a civil action is filed in a court by the commission within the 3-year or 6-year period, (2) the individual made an intentional false statement, misrepresentation, or concealment of material information to obtain the benefits, or (3) the commission issued a determination requiring restitution within the 3-year or 6-year period. . . .
>
> (b) . . . *For benefit years beginning after the conversion date prescribed in section 75, if the commission determines that a person has intentionally made a false statement or misrepresentation or has concealed material information to obtain benefits*, whether or not the person obtains

---

[11] MCL 421.54 has provided and continues to provide penalties for a claimant who obtains benefits through intentional fraud or misrepresentation of material facts. Several news sources have reported that Michigan's penalty provisions for fraudulently obtained benefits are believed to be some of the most punitive in the nation.

benefits by or because of the intentional false statement, misrepresentation, or concealment of material information, *the person shall, in addition to any other applicable penalties, have his or her rights to benefits for the benefit year in which the act occurred canceled as of the date the commission receives notice of, or initiates investigation of, a possible false statement, misrepresentation, or concealment of material information, whichever date is earlier, and wages used to establish that benefit year shall not be used to establish another benefit year. . . .*

(c) Any determination made by the commission under this section is final unless an application for a redetermination *is filed with the commission in accordance with section 32a.*

(d) The commission *shall take the action necessary to recover all benefits improperly obtained or paid under this act, and to enforce all penalties under subsection (b).* [MCL 421.62, as amended by 1995 PA 125 (emphasis added).]

The repeated use of "determines" throughout § 62 during the period relevant to Lucente's case is a strong indication that an original determination was required to invoke the restitution, fraud, and disqualification provisions of §§ 62 and 54. Section 62(c) also provided that a "*determination* made . . . under this section *is final unless* an application for a *redetermination* is filed with the commission in accordance with *section 32a*." (Emphasis added.) Regardless of whether it was the UIA's ordinary practice at the time, the text of § 62 in 2010 did not expressly allow for fraud accusations, fraud penalties, or restitution to be raised and imposed for the first time in a UIA-initiated redetermination.

Section 62 is less clear, however, with regard to Herzog's case. In October 2017, the time relevant to Herzog's case, MCL 421.62 provided as follows:

(a) If the unemployment agency *determines that a person has obtained benefits to which that person is not entitled, or a subsequent determination by the agency or a decision of an appellate authority reverses a prior qualification for benefits, the agency may recover a sum equal to the amount received plus interest by 1 or more of the following methods*: . . . *The unemployment agency shall issue a determination requiring restitution*

18

*within 3 years after the date of finality of a determination, redetermination, or decision reversing a previous finding of benefit entitlement.* Except in the case of benefits improperly paid because of suspected identity fraud, the unemployment agency shall not initiate administrative or court action to recover improperly paid benefits from an individual more than 3 years after the date that the last determination, redetermination, or decision establishing restitution is final. *Except in the case of benefits improperly paid because of suspected identity fraud, the unemployment agency shall issue a determination on an issue* within 3 years from the date the claimant first received benefits in the benefit year in which the issue arose, or *in the case of an issue of intentional false statement, misrepresentation, or concealment of material information in violation of section 54(a) or (b) or sections 54a to 54c, within 3 years after the receipt of the improperly paid benefits unless the unemployment agency filed a civil action in a court within the 3-year period; the individual made an intentional false statement, misrepresentation, or concealment of material information to obtain the benefits; or the unemployment agency issued a determination requiring restitution within the 3-year period. . . .*

(b) *For benefit years beginning on or after October 1, 2000*, if the unemployment agency *determines that a person has intentionally made a false statement or misrepresentation or has concealed material information to obtain benefits*, whether or not the person obtains benefits by or because of the intentional false statement, misrepresentation, or concealment of material information, the *person shall, in addition to any other applicable interest and penalties, have his or her rights to benefits for the benefit year in which the act occurred canceled as of the date the claimant made the false statement or misrepresentation or concealed material information, and wages used to establish that benefit year shall not be used to establish another benefit year. . . .*

(c) Any determination made by the unemployment agency under this section *is final unless an application for a redetermination is filed in accordance with section 32a.*

(d) The unemployment agency *shall take the action necessary to recover all benefits improperly obtained or paid under this act, and to enforce all interest and penalties under subsection (b).* [MCL 421.62, as amended by 2016 PA 522 (emphasis added).]

In November 2017, MCL 421.62(a) no longer referred solely to what the UIA

"determines" as it did in 2010. Rather, § 62(a) began:

> If the unemployment agency *determines* that a person has obtained benefits to which that person is not entitled, or *a subsequent determination by the agency* or a decision of an appellate authority *reverses a prior qualification for benefits*, the agency may recover a sum equal to the amount received plus interest . . . . The [UIA] shall issue a determination requiring restitution within 3 years after the date of finality of a determination, redetermination, or decision reversing a previous finding of benefit entitlement. [MCL 421.62(a), as amended by 2016 PA 522 (emphasis added).]

In 2010, § 62(a) only referred to the UIA making an initial determination that a claimant had wrongfully received benefits or intentionally withheld or misrepresented information. The version of the statute that became effective on April 9, 2017, contrasted this initial determination with a "subsequent determination" that "reverses" a prior qualification for benefits—i.e., a redetermination under MCL 421.32a. This could suggest that the UIA was granted greater flexibility to invoke § 62, such as through the use of a redetermination. But this is nullified by (1) language in § 62(a) stating that the UIA "shall issue a determination requiring restitution within 3 years after the date of finality of a determination, redetermination, or decision reversing a previous finding of benefit entitlement," and (2) language in § 62(c) stating that "[a]ny determination made by the unemployment agency under this section is final unless an application for a redetermination is filed in accordance with section 32a." Thus, while the majority opinion does not analyze the statutory provisions in this manner, I agree with the ultimate conclusion that § 62 required the UIA to issue original determinations as to both fraud and restitution.

## III. REMEDY

I join Part IV(C) of the majority opinion to the extent that it invalidates the UIA's decisions as to fraud and restitution and requires the UIA to respect the legal and procedural

distinctions between a determination and redetermination. However, I believe the Court should uphold the redetermination notices as they relate to the claimant's eligibility, subject to the "good cause" requirement of § 32a(2). As discussed, I believe §§ 32(f) and 32a provided the UIA authority to use either prior benefit-check determinations or an original eligibility determination as the base determination for reconsidering a claimant's eligibility for benefits. Given that the redeterminations in this matter were issued more than 30 days after any applicable determination, the UIA needed to show good cause for its delay. This issue was never litigated during the ALJ proceedings in Lucente's case, and because Herzog has not received a hearing before an ALJ, the matter has yet to be litigated in his case. Accordingly, I would remand these cases to the appropriate ALJs to allow the parties to litigate whether the UIA had good cause for reconsidering the claimants' eligibility. I would, however, invalidate the notices at issue as they relate to fraud and restitution because those findings required original determinations, and I thus join Part V of the majority opinion in part.

Elizabeth M. Welch

21

# STATE OF MICHIGAN

## SUPREME COURT

DEPARTMENT OF LICENSING AND
REGULATORY
AFFAIRS/UNEMPLOYMENT
INSURANCE AGENCY,

        Appellee,

v                                No. 160843

FRANK LUCENTE,

        Claimant-Appellant,

and

DART PROPERTIES II, LLC,

        Employer-Appellee.

_____

DEPARTMENT OF TALENT AND
ECONOMIC
DEVELOPMENT/UNEMPLOYMENT
INSURANCE AGENCY,

        Appellee,

v                                No. 160844

MICHAEL HERZOG,

        Claimant-Appellant,

and

CUSTOM FORM, INC.,

        Employer-Appellee.

_____

ZAHRA, J. (*concurring in part and dissenting in part*).

I join the Court in affirming the Court of Appeals' holding that MCL 421.62 (§ 62) of the Michigan Employment Security Act (MESA), MCL 421.1 *et seq*., authorizes the Department of Licensing and Regulatory Affairs/Unemployment Insurance Agency (the Agency) to make original, in-the-first-instance determinations imposing restitution for overpayment or penalties for fraud.

I dissent, however, from the majority's form-over-substance holding: that the notices sent to these claimants are really redeterminations.[1] In my view, the Agency's notices are, in substance, § 62 determinations that were simply mislabeled. Looking beyond the notices' labels and focusing instead on their substance, it is clear that the Agency understood itself to be proceeding under § 62 given that the notices cite § 62 as authority for the Agency's actions.[2] This Court ought to respect that choice.

The majority's ruling—that the notices *are* redeterminations because they are *labeled* as such—is contrary to well-settled administrative law, which plainly supports my substance-over-form approach. *Azar v Allina Health Servs* dealt with whether the federal Department of Health and Human Services—which administers Medicare through one of its operating divisions, the Centers for Medicare & Medicaid Services—was required to go through a notice-and-comment process to issue any " 'statement of policy . . . that establishes or changes a substantive legal standard . . . .' "[3] The Supreme Court of the

---

[1] See *ante* at 3 (opinion of MCCORMACK, C.J.); *ante* at 11 (opinion of WELCH, J.).

[2] See *ante* at 3-4 (Lucente); 5-6 (Herzog) (opinion of WELCH, J.).

[3] *Azar v Allina Health Servs*, ___ US ___, ___; 139 S Ct 1804, 1809; 204 L Ed 2d 139 (2019), quoting 42 USC 1395hh(a)(2).

2

United States held that a period of notice and comment was required. In so holding, it explained that agencies cannot "avoid notice and comment simply by mislabeling their substantive pronouncements. On the contrary, courts have long looked to the *contents* of the agency's action, not the agency's self-serving *label*, when deciding whether statutory notice-and-comment demands apply."[4]

The United States Court of Appeals for the District of Columbia Circuit has taken a similar position on labeling. *R Comm of Texas v United States* dealt with whether the decision of the federal Interstate Commerce Commission (ICC) to deny the Railroad Commission of Texas (RCT) the requisite certification under federal law for the RCT to regulate intrastate rail traffic was valid.[5] The D.C. Circuit held that it was. In so holding, it explained that, "[p]roperly viewed, the ICC's decision should be interpreted as a refusal to extend provisional certification rather than a revocation of the earlier provisional certification. This mere mislabelling of what was . . . a fully supported agency action does not" serve to invalidate it.[6] In other words, an agency's mislabeling, whether it be self-serving or inadvertent, cannot and does not relieve courts of their duty to determine what an agency is actually doing by looking to the substance of its action.

---

[4] *Id*. at ___; 139 S Ct at 1812. See also *Gen Motors Corp v Ruckelshaus*, 239 US App DC 408, 412; 742 F2d 1561 (1984) (en banc) ("[T]he agency's own label, while relevant, is not dispositive."); *Guardian Fed S&L Ass'n v Fed S&L Ins Corp*, 191 US App DC 135, 143-144; 589 F2d 658 (1978) (stating that if "a so-called policy statement is in purpose or likely effect . . . a binding rule of substantive law," it "will be taken for what it is").

[5] *R Comm of Texas v United States*, 246 US App DC 352; 765 F2d 221 (1985).

[6] *Id*. at 357 n 4.

Two other areas of law support my position. First, it is well settled in the law of pleadings that "[a] party's choice of label for a cause of action is not dispositive. We are not bound by the choice of label because to do so '*would exalt form over substance*.' "[7] I see no reason not to transplant that principle from the law of pleadings and apply it to this Court's de novo examination of whether the Agency's notices were § 62 determinations. Just as courts routinely peer behind the labels of pleadings to see what the parties' actual claims are, we should peer behind the labels of these notices (and other administrative actions like them) to see what they are in substance so that, by seeing them for what they are, parties' rights will be properly adjudged.

The Supreme Court of the United States has also recognized that substance predominates over form with regard to the use of titles and headings in statutory interpretation. The majority in *Yates v United States*[8] explained that statutory titles (and section headings) are "not commanding" but nonetheless are "*tools available for the resolution of a doubt about the meaning of a statute*."[9] *Yates* stands for the elementary

---

[7] *Norris v Lincoln Park Police Officers*, 292 Mich App 574, 582; 808 NW2d 578 (2011), quoting *Johnston v Livonia*, 177 Mich App 200, 208; 441 NW2d 41 (1989) (emphasis added).

[8] *Yates v United States*, 574 US 528; 135 S Ct 1074; 191 L Ed 2d 64 (2015).

[9] *Id*. at 540 (opinion of Ginsburg, J.) (quotation marks and citation omitted; emphasis added). See also *United States v Nakhleh*, 895 F3d 838, 841 (CA 6, 2018). Justice Alito's concurrence in *Yates* puts a finer point on this idea: "[Statutory] [t]itles . . . are . . . not dispositive. Here, if the list of nouns did not already suggest that 'tangible object' should mean something similar to records or documents, especially when read in conjunction with [18 USC] § 1519's peculiar list of verbs with their focus on filekeeping, then *the title would not be enough on its own*." *Yates*, 574 US at 552 (Alito, J., concurring) (emphasis added).

proposition that statutory titles do not control what statutes mean, but their text does. As with the pleadings principle, I see no reason not to explicitly extend *Yates*' teaching on statutory titles to the Agency's actions. If courts can look beyond statutes' titles to see what the statutes actually say and do, then they should do the same with things like these notices' labels to see what the notices actually say and do. Administrative law, the law of pleadings, and the relevant principles of statutory interpretation all point in the same direction: The outcome of this case should turn on the substance of the notices rather than on a mechanistic devotion to their form.[10]

Moreover, claimants were not prejudiced by the Agency's purported "redetermination" actions. As ably cataloged by the Court of Appeals, the notices informed claimants that they had been disqualified from receiving benefits and why, that they had fraudulently received benefits and were required to pay restitution and fraud penalties, that they owed the Agency money and how much, and that they had the right to appeal.[11] In other words, the decisions provided claimants "precisely the process contemplated by the

---

[10] The majority contends that the notices are really redeterminations because they "provided different instructions on how to protest a 'determination' versus appealing a 'redetermination.' " See *ante* at 29 n 15 (opinion of McCORMACK, C.J.). But the majority's objection is just a species of form-over-substance reasoning with which I have expressed my disagreement. The notices featured comprehensive instructions for *both* actions, so on what basis does the majority decide that this fact tips the analysis toward the conclusion that they are redeterminations rather than determinations? I submit that there is no sound reason to think that a portion of a notice from the Agency that includes both sets of instructions renders the Agency's action a redetermination rather than a determination.

[11] *Dep't of Licensing & Regulatory Affairs/Unemployment Ins Agency v Lucente*, 330 Mich App 237, 259-260, 264; 946 NW2d 836 (2019).

5

[MESA] . . . ."[12] Any potential confusion caused by the mislabeling did not prejudice claimants. The determinations of fraud were made within the proper time frame, claimants were informed of their right to protest,[13] and claimants were able to, and did, seek de novo appellate review—before two administrative bodies and the state's entire appellate court system.

Because the notices were simply § 62 determinations that were mislabeled and claimants were not prejudiced by that mislabeling, I would affirm the Court of Appeals.

Brian K. Zahra
David F. Viviano

---

[12] *Id.*

[13] The majority alleges that "it is far from clear that the Agency understood its decisions to be original 'determinations' " because, while the MESA permits the Agency either to issue a redetermination or transfer the matter to an administrative law judge (ALJ) in response to a claimant's protest, "the Agency does not identify anything in the record that would indicate it exercised such discretion in these cases." See *ante* at 29 n 15 (opinion of MCCORMACK, C.J.). But with respect to Lucente, it appears that he did receive review by the Agency under MCL 421.32a because the Agency determined that his challenge was untimely. With respect to Herzog, while the record is somewhat unclear, the Agency's "Notice of In Person Hearing" responding to Herzog's challenge and transferring his case to an ALJ was entirely consistent with how MCL 421.32a(1) requires a challenge to a determination to be handled. "Upon application by an interested party for review of a determination, . . . the [Agency] shall in its discretion issue a redetermination . . . or may transfer the matter to an [ALJ] for a hearing." MCL 421.32a(1). Therefore, it cannot be said that claimants "lost out" on any process under the MESA.